IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | | |
|---|---|---|
| VIRGINIA ARLENE GOFORTH, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Civil Action No. 1:09-0003** |
| | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is the United States' Motion to Dismiss (Document No. 15.), filed on September 24, 2009. The Court notified Plaintiffs pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiffs had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting their claims as they are challenged by the United States in moving to dismiss. (Document No. 17.) On October 27, 2009, Mrs. Goforth filed her Responses in Opposition to the United States' Motion to Dismiss. (Document Nos. 18 and 19.) The United States filed its Reply on October 30, 2009. Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motion to Dismiss should be granted.

FACTUAL AND PROCEDURAL HISTORY

On January 5, 2009, Plaintiffs, acting *pro se,* filed their Complaint in this matter claiming entitlement to monetary damages under 42 U.S.C. §1983.[1] (Document No. 1.) Plaintiffs named the

---

[1] Because Plaintiffs are acting *pro se*, the documents which they have filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

following as Defendants: (1) the United States of America; (2) the Federal Bureau of Prisons; (3) United States Attorney General, Michael B. Mukasey; (4) United States Inspector General; (5) Harley G. Lappin, Director of Bureau of Prisons; (6) Newton Kending, Bureau of Prisons Medical Director; (7) Amber Nelson, Warden, Alderson Federal Prison Camp; (8) Alice Lowe, Associate Warden; (9) Alan Blankenship, Health Administrator of Health Services Unit; (10)Neal Rehburg, Doctor of Osteopathy; (11) Debra Hickey, 2006 Warden; (12) Donna Saffold, 2006 Associate Warden; (13) Vicki Dupree, Captain; (14) J. Engleman, Unit Manager; (15) Cynthia Godbold, 2006 Unit Manager; (16) the United States Department of Justice; and (17) the United States Sentencing Guideline Commission. (Id.) Mrs. Goforth alleges that the conditions of confinement at FPC Alderson resulted in cruel and unusual punishment.[2] During her incarceration at FPC Alderson, Mrs. Goforth contends that Defendants acted with deliberate indifference concerning her medical care and overall well-being. Specifically, Mrs. Goforth asserts that Defendants acted with negligence and deliberate indifference concerning the following: (1) Proper nutrition; (2) Skin lesion on Mrs. Goforth's nose; (3) Injury to Mrs. Goforth's left hip, shoulder, and thoracic spine as a result of a slip and fall; (4) Proper dental care; (5) Drug withdrawals by prisoners; (6) Administration of vitamin B12 injections on a regular schedule; (7) Treatment of health problems disclosed upon arrival at FPC Alderson; and (8) Complaints of pain and suffering. (Id., pp. 4 - 5.) Mrs. Goforth claims that BOP staff are "carelessly and openly negligent resulting in many accidents . . . this coupled with brazen willful indifferent attitude, and them against us mentality, results in constructive and actual punishment over and over." (Id., p. 12.) Mrs. Goforth alleges that the "deprivation of proper food,

---

[2]  The Bureau of Prisons' Inmate Locator indicates that Mrs. Goforth was released from custody on December 11, 2008.

exercise (rehabilitative), medical care, and reasonable safety, and the deliberate indifference of the defendants (staff) in concern to these and other deprivation, is explicitly the type of conduct forbidden by the 8th Amendment." (Id., p. 20.) As a result of the above, Mrs. Goforth contends that she "suffered and suffers yet, from pain, fatigue, and emotional grief and stress." (Id., p. 12.) Mrs. Goforth requests "$2.9 million dollars in relief" and "seeks punitive damages in the amount of $1.9 million dollars, to discourage future willful indifference, negligence, and cruel misconduct." (Id., p. 24.) Mr. Goforth seeks damages for loss of consortium. (Id., p. 4.)

In screening Plaintiffs' Complaint, the undersigned determined that Plaintiffs had potentially stated a claim under the Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq.*, but failed to state a cognizable claim under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Document No. 6.) By Order entered on August 11, 2009, the undersigned granted Plaintiffs' Application to Proceeding Without Prepayment of Fees and ordered the Clerk to issue a Summons requiring the United States to answer or otherwise respond to Plaintiff's FTCA claim based upon her alleged slip and fall at FPC Alderson. (Id.) By Proposed Findings and Recommendation also entered on August 11, 2009, the undersigned recommended that Plaintiffs' Bivens claims be dismissed. (Document No. 7.)

On August 27, 2009, Mrs. Goforth timely filed her "Response to Proposed Findings and Recommendations." (Document Nos. 12 and 13.) In her Response, Mrs. Goforth stated that she agreed to the following: (1) "Plaintiff, under 42 U.S.C. 1983, agrees to withdraw the following defendants under the Court's recommendation: Federal Bureau of Prisons, U.S. Attorney General,

Inspector General, U.S. Department of Justice, U.S. Sentencing Commission, and the United States of America;" and (2) "Plaintiffs agree with the Court to proceed with FCTA claim against the United States of America withdrawing all other defendants." (Id.) Further, Mrs. Goforth stated additional facts in support of her Bivens claim and continued to argue that she was subjected to cruel and usual punishment in violation of the Eighth Amendment. (Id., pp. 3 - 13.)

By Memorandum Opinion and Order entered on April 14, 2010, United States District Judge David A. Faber adopted the undersigned's recommendation in part and referred the matter back to the undersigned for reconsideration of Plaintiff's Bivens claim in light of the additional facts provided by Plaintiff in her Response. (Document No. 22.) Accordingly, the undersigned considered the additional factual information set forth in Mrs. Goforth's Response and determined that she potentially stated a Bivens claim by contending that her Eighth Amendment right had been violated. (Document No. 23.) By Order entered on May 10, 2010, the undersigned directed the Clerk to issue process in this case pursuant to Rule 4, Federal Rules of Civil Procedure upon the following Defendants: (1) Harley G. Lappin, Director of Bureau of Prisons; (2) Newton Kending, Bureau of Prisons Medical Director; (3) Amber Nelson, Warden of Alderson Federal Prison Camp; (4) Alice Lowe, Associate Warden; (5) Alan Blankenship, Health Administrator of Health Services Unit; (6) Neal Rehburg, Doctor of Osteopathy; (7) Debra Hickey, 2006 Warden; (8) Donna Saffold, 2006 Associate Warden; (9) Vicki Dupree, Captain; (10) J. Engleman, Unit Manager; and (11) Cynthia Godbold, 2006 Unit Manager. (Document Nos. 23 and 24.)

On September 24, 2009, the United States filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 15 and 16.) The United States argues that Plaintiffs' Complaint should be

dismissed because (1) Mrs. Goforth's "multiple tort claims are barred by 18 U.S.C. § 4126 (Compensation Act) as she was injured when she was working cottage maintenance cleaning the showers at FPC Alderson on November 7, 2006" (Document No. 15, pp. 1 - 2.); (2) Alternatively, Mrs. Goforth's "claims of negligent medical treatment are covered by the West Virginia Medical Professional Liability Act (MPLA), W.Va. Code § 55-7B-1 et seq. (2003), which required that a plaintiff provide the United States with notice of a claim and screening certificate of merit prior to suit" (Id., pp. 2 - 3.); and (3) Mr. Goforth "has filed no administrate tort claim, and therefore the court lacks subject matter jurisdiction over any claims . . . including loss of consortium" (Id., p. 3.). In support of its Motion, the United States attaches the following Exhibits: (1) Mrs. Goforth's "Claim for Damage, Injury, or Death" dated July 7, 2008 (Document No. 15-1, pp. 1 - 3.); (2) Mrs. Goforth's "Claim for Damage, Injury, or Death" dated July 5, 2008 (Id., pp. 4 - 5.); (3) Mrs. Goforth's "Claim for Damage, Injury, or Death" dated July 7, 2008 (Id., pp. 6 - 7.); (4) Mrs. Goforth's "Claim for Damage, Injury, or Death" dated July 3, 2008 (Id., pp. 8 - 9.); (5) A letter from the Department of Justice dated September 25, 2008, denying Mrs. Goforth's Tort Claim No. TRT-MXR-2008-05462 (Id., pp. 10 - 11.); and (6) A copy of Mrs. Goforth's "Central Office Administrative Remedy Appeal dated June 25, 2007 (Id., p. 12.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiffs on September 29, 2009, advising them of their right to file a response to the United States' Motion to Dismiss. (Document No. 17.) On October 27, 2009, Mrs. Goforth filed her "Responses to the United States' Motion to Dismiss." (Document Nos. 18 and 19.) First, Mrs. Goforth argues that she was never notified that her November 6, 2006, injury was considered as a work related injury.

(Document No. 18, pp. 1 - 3.) Mrs. Goforth states that "Alan Blankenship, Alderson FPC Health administrator, was addressed by Plaintiff Goforth in relation to the medical co-payments during Health Services open house and was told the injury was not related to a work injury since she was at a "census count" and not "actually" working at the time of the injury." (Id., p. 3.) Mrs. Goforth contends that "there is no workman's compensation information posted in work area, the administrative building, in the risk management office, health services, or at the law library on the compound at Alderson Federal Prison camp, therefore, it is impossible for an inmate to know any information under 18 U.S.C. § 4126." (Id.) Mrs. Goforth further explains as follows:

> Plaintiff Goforth contends that inmates are not notified nor are they aware that injuries sustained while under the employment of the prison system is covered under this title. Plaintiff Goforth's only notification of such title was in September 2008, at which time she was under the impression that there was a mistake on the government's part since she had been informed by Alderson FPC health administrator that this injury was not "work related;" nor was she notified by risk management director, Samuel Adams, and/or staff. She was not notified during or after she filed her administrative remedies.

(Id., p. 3.) Mrs. Goforth, therefore, argues that her FTCA claim should not be dismissed pursuant to 18 U.S.C. § 4126. (Id.)

Second, Mrs. Goforth contends that her FTCA claim should not be dismissed pursuant to W. Va. Code § 55-7B-1 because "she repeatedly attempted to resolve healthcare issues through the only means available to inmates, which is the administrative process. (Document No. 19, p. 1.) Mrs. Goforth explains that she "and others attempted to get information from the State of West Virginia Nursing License Board to file a complaint with the State, however no information was given in response." (Id., p. 2.) Mrs. Goforth argues that she "exhausted all avenues of known appropriate actions against Alderson Federal Prison without notification of a State Code referencing such action

under the State, at which time Goforth filed a claim in this court for relief." (Id.) Mrs. Goforth further claims that her FTCA claim is appropriately filed with this Court because "Health Services staff and agents are employed by the Federal Bureau of Prisons, a Federal entity, therefore are under the control of the United States Government, and not any State entity." (Id.) Accordingly, Mrs. Goforth "prays that the Court has jurisdiction in this matter and will deny the United States' Motion to Dismiss." (Id., p. 3.)

In support of her Response, Mrs. Goforth attaches the following Exhibits: (1) A copy of Medical Reports and the "Chronological Record of Medical Care" for Mrs. Goforth dated October 26, 2006, through May 9, 2008 (Document No. 18-1, pp. 1 - 44.); (2) A copy of Mrs. Goforth's "Request for Administrative Remedy" (Remedy Id. 444836-F1) (Document No. 19-1, pp. 2 - 3.); (3) A copy of Mrs. Goforth's "Correctional Counselor's Administrative Remedy Form" (Id., p. 3.); (4)  A copy of Warden Hickey's Response dated April 3, 2007, denying Mrs. Goforth's Administrative Remedy (Remedy Id. 444836-F1) (Id., p. 4.); (5) A copy of Mrs. Goforth's "Regional Administrative Remedy Appeal" (Remedy Id. 444836-F1) dated April 11, 2007 (Id., p. 5.); (6) A copy of Regional Director K.M. White's Response dated December 6, 2007, denying Mrs. Goforth's appeal (Remedy Id. 467135-R1) (Id., pp. 6 and 18.); (7) A copy of Administrator Harrell Watts' Response dated September 25, 2007, denying Mrs. Goforth's appeal (Remedy Id. 444836-A2) (Id., pp. 7 and 12.); (8) A copy of Mrs. Goforth's "Central Office Administrative Remedy Appeal" (Remedy Id. 444836-A2) dated June 25, 2007 (Id., pp. 8, 11, 23.); (9) A copy of Mrs. Goforth's "Central Office Administrative Remedy Appeal" (Remedy Id. 444836-A1) dated April 11, 2007 (Id., p. 9.); (10) A copy of Regional Director White's Response dated June 5, 2007,

denying Mrs. Goforth's appeal (Remedy Id. 444836-R1) (<u>Id.</u>, p. 10.); (11) A copy of Mrs. Goforth's "Request for Administrative Remedy" (Remedy Id. 457971-F1) dated June 25, 2007 (<u>Id.</u>, p. 13.); (12) A copy of Warden Neslon's Response dated July 17, 2007, denying Mrs. Goforth's administrative remedy request (Remedy Id. 457971-F1) (<u>Id.</u>, p. 14.); (13) A copy of Mrs. Goforth's "Central Office Administrative Remedy Appeal" (Remedy Id. 457971-A1) dated October 3, 2007 (<u>Id.</u>, p. 15.); (14) A copy of Mrs. Goforth's "Correctional Counselor's Administrative Remedy Form" (<u>Id.</u>, p. 16.); (15) A copy of Mrs. Goforth's "Regional Administrative Remedy Appeal" (Remedy Id. 457971-R1) dated October 22, 2007 (<u>Id.</u>, p. 17.); (16) A copy of Administrator Watts' Response dated February 28, 2008, denying Mrs. Goforth's appeal (Remedy Id. 467135-A1) (<u>Id.</u>, p. 19.); (17) A copy of Mrs. Goforth's "Central Office Administrative Remedy Appeal" (Remedy Id. 467135-A1) dated December 26, 2007 (<u>Id.</u>, p. 20.); (18) A copy of Warden Nelson's Response dated October 12, 2007, denying Mrs. Goforth's appeal (Remedy Id. 467135-F1) (<u>Id.</u>, p. 21.); (19) A copy of Mrs. Goforth's "Regional Administrative Remedy Appeal" (Remedy Id. 457971-R1) dated July 26, 2007 (<u>Id.</u>, p. 22.); (20) A copy of Regional Director White's Response dated September 17, 2007 (Remedy Id. 457971-R1) (<u>Id.</u>, p. 24.); (21) A copy of Administrator Watts' Response dated December 14, 2007, denying Mrs. Goforth's appeal (Remedy Id. 457971-A1); (22) Mrs. Goforth's "Request for Administrative Remedy" dated January 8, 2008 (Remedy Id. 478688-F1) (<u>Id.</u>, p. 26.); (23) A copy of Mrs. Goforth's "Regional Administrative Remedy Appeal" (Remedy Id. 478688-F1) dated February 4, 2008 (<u>Id.</u>, p. 27.); (24) A copy of Warden Nelson's Response dated January 29, 2008, denying Mrs. Goforth's administrative remedy request (Remedy Id. 478688-F1) (<u>Id.</u>, p. 28.); (25) A copy of Regional Director White's Response dated February 28, 2008, denying

8

Mrs. Goforth's appeal (Remedy Id. 478688-R1) (Id., p. 29.); (26) A copy of Mrs. Goforth's "Central

Office Administrative Remedy Appeal" (Remedy Id. 478688-A1) dated March 12, 2008 (Id., p. 31.);

(27) A copy of Administrator Watts' Response dated May 9, 2008, denying Mrs. Goforth's Appeal

(Remedy Id. 478688-A1) (Id., p. 32.); (28) A copy of a "Public Notice" dated March 20, 2008

(Document No. 19-2, p. 1.); (29) A copy of a letter dated March 25, 2008, to the Joint Commission

from Mrs. Goforth requesting an interview (Id., pp. 2 - 3.); (30) A copy of a letter dated April 1,

2008, to Mrs. Goforth from the Joint Commission regarding her request for a Public Information

Interview (Id., pp. 4 - 5.); (31) A copy of the FPC Alderson's Quality Report (Id., pp. 6 - 10.); (32)

A copy of Mrs. Goforth's "Claim for Damage, Injury, or Death" (Id., pp. 11, 13 - 17.); (33) A letter

from the Department of Justice dated May 29, 2008, acknowledging receipt of Mrs. Goforth's

administrative tort claim (Tort Claim No. TRT-MXR-2008-04497) (Id., p. 12.); and (34) A letter

from the Department of Justice dated May 31, 2008, acknowledging receipt of Mrs. Goforth's

administrative tort claim (Tort Claim No. TRT-MXR-2008-05462) (Id., p. 18.)

On October 30, 2009, the United States filed its Reply. (Document No. 20.) The United

States first argues that Mrs. Goforth's claim that "she was uninformed or misinformed about her

Compensation Act rights" is without merit. (Id., p. 1.) The United States explains that "on May 12,

2006, she executed a document entitled 'Uniform Basic Safety Regulation,'" which stated the she

was provided with a copy of the Inmate Accident Compensation Procedures. (Id., p. 2.) The United

States further states that "when Plaintiff's FTCA claim was denied in writing on September 25,

2008, the basis of the denial was that plaintiff's injury was covered by the Compensation Act. If

plaintiff had filed a claim under the Compensation Act after she received the denial letter, her claim

would have been timely as plaintiff was not released from FPC Alderson until December 11, 2008."
(Id., pp. 2 - 3.) The United States next contends that even assuming Mrs. Goforth was misinformed
as to whether her injury was covered by the Compensation Act, her FTCA claim does not survive
because "there is no estoppel against the United States for erroneous advice from one of its
employees about benefits." (Id., p. 3.) Finally, the United States contends "plaintiff's allegation of
being uninformed or misinformed cannot waive the lack of subject matter jurisdiction over
plaintiff's FTCA claims." (Id., p. 4.) In support of its Reply, the United States attaches the following
as Exhibits: (1) A copy of the "Uniform Basic Safety Regulations" executed by Mrs. Goforth on
May 12, 2006; and (2) A copy of the Bureau of Prisons' Inmate Locator indicating that Mrs. Goforth
was released from custody on December 11, 2008.

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129
S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554,
570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for
purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare
recitals of the elements of a cause of action, supported by mere conclusory statements, do not
suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative
level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555,

127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

### 1.    Inmate Accident Compensation Act:

The Inmate Accident Compensation Act [IACA] provides an accident compensation procedure "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4). Federal prisoners, however, cannot recover under the FTCA for work-related injuries as the Prison Industries Fund, 18 U.S.C. § 4126, provides the exclusive remedy for injuries incurred in work-related incidents. See United States v. Demko, 385 U.S. 149, 87 S.Ct. 382, 17 L.Ed.2d 258 (1966). Recovery is barred under the FTCA for the work-related injury itself and for the negligent treatment of that injury. Vander v. U.S. Dept. of Justice, 268 F.3d 661 (9th Cir. 2001). A "work-related injury" is "defined to include any injury including occupational disease or illness proximately caused by the actual performance of the inmate's work assignment." 28 C.F.R. § 301.102(a). "The cause of the injury is irrelevant so long as the injury itself occurred while the prisoner was on the job." Aston v. United States, 625 F.2d 1210, 1211 (5th Cir. 1980)(per curiam). Furthermore, Section 4126 not only covers injuries incurred while working in the prison, but includes pre-existing medical conditions that are subsequently injured or exacerbated in work-related incidents. See Vander, *supra* 268 F.3d at 664; Wooten v. United States, 825 F.2d 1039 (6th Cir. 1987); Aston, 625 F.2d at 1211.

11

According to Mrs. Goforth's own allegations, she was injured as a result of a slip and fall while working cottage maintenance at FCP Alderson. (Document No. 15-1, pp. 1 - 9.) Specifically, Mrs. Goforth alleges that "I injured my hip while working at Alderson FPC in cottage maintenance on range A4." (Id., p. 4.) Therefore, Mr. Goforth's injury was admittedly work-related. Mrs. Goforth argues that IACA does not apply because Mr. Blankenship erroneously informed her that she was not covered by the IACA. The Court finds, however, that there is no estoppel against the United States for erroneous advice from a federal employee concerning an inmate's eligibility for benefits. See Office of Personnel Management v. Richmond, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)(stating that the erroneous advice given by a government employee to a benefits claimant could not estop the government from denying benefits not otherwise permitted by law). Next, Plaintiff contends that IACA does not apply because she was misinformed or unaware of IACA. Plaintiff, however, signed the "Uniform Basic Safety Regulations" on May 12, 2006, acknowledging that she had received a copy of the IACA procedures. (Document No. 21, p. 1.) Specifically, the "Uniform Basic Safety Regulations' form provides as follows:

> Every effort will be made to provide a safe working environment. As a new commitment you are being provided with a copy of the safety regulations as reflected below and a copy of the Inmate Accident Compensation Procedures. You are required to sign and date this form at the bottom to indicate you have received this information.
>
> * * *
>
> 12.    If you are injured while performing your work assignment, no matter how minor it may seem, report the injury to your work supervisor. Failure to report a work injury within a maximum of 48 hours may result in the forfeiture of lost time wages and/or inmate accident compensation.
>
> 13.    If you suffer a work injury, and feel your injury has resulted in some degree of physical impairment, you may file a claim for Inmate Accident Compensation. To do so, you should contact the institution's Safety Manager

12

> approximately 30 days prior to your release or transfer to a Community
> Treatment Center. The Safety Manager will assist you in completing your
> claim and will arrange a medical evaluation which must be performed with
> regard to your claimed injury.

(Id.) The Department of Justice also informed Mrs. Goforth of the applicability of the IACA to her

claim in its denial letter dated September 25, 2008. (Document No. 15-1, p. 10 - 11.) Specifically,

the Department of Justice stated as follows:

> As the injury occurred on your work assignment, the injury is a work-related injury
> and is covered exclusively by the Inmate Accident Compensation Act, authorized
> by 18 U.S.C. § 4126. This section provides a person who sustains a work-related
> injury while incarcerated a means to seek compensation after release from prison
> for continued impairment resulting from the injury. The United States Supreme
> Court held in U.S. v. Demko, 385 U.S. 149 (1966), that this compensation system
> is an inmate's sole means of recovery for work-related injuries.

(Id., p. 10.) The Department of Justice instructed Mrs. Goforth to contact the Safety Manager at FPC

Alderson "[t]o obtain information regarding the Inmate Accident Compensation System." (Id., fn.

1.) After receiving the September 25, 2008, denial letter, Mrs. Goforth could have timely filed a

claim under the IACA because she was not released from custody until December 11, 2008. See 28

C.F.R. § 301.303(a).[3] The undersigned, therefore, finds that Mrs. Goforth's claim that she was

misinformed or unaware of the IACA is without merit. Accordingly, the United States' Motion to

Dismiss should be granted because the Court lacks subject-matter jurisdiction.[4]

---

[3] Title 28 C.F.R. § 301.303(a) provides that "[n]o more than 45 days prior to the date of an
inmate's release, but no less than 15 days prior to this date, each inmate who feels that a residual
physical impairment exists as a result of an industrial, institution, or other work-related injury shall
submit a FPI Form 43."

[4] To the extent that Mrs. Goforth is arguing that the United States has waived subject-matter
jurisdiction, the undersigned finds that such an argument is without merit because subject-matter
jurisdiction may not be waived. See Bragg v. West Virginia Coal Assoc., 248 F.3d 275, 300 (4th Cir.
2001).

2.      **Mrs. Goforth's FTCA Claim – MPLA**:

Notwithstanding the above, the undersigned will consider Mrs. Goforth's claim under the

FTCA. An inmate "can sue under the FTCA to recover damages from the United States Government

for personal injuries sustained during confinement in a federal prison, by reason of the negligence

of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805

(1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort
> claims, in the same manner and to the same extent as a private individual under like
> circumstances, but shall not be liable for interest prior to judgment or for punitive
> damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220,

223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same

respect as a private person would be liable under the law of the place where the act occurred." Id.

In the present case, Mrs. Goforth alleges that Defendants' negligent acts occurred in the State

of West Virginia. Accordingly, West Virginia state law applies. Under West Virginia law, a plaintiff

must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a

plaintiff must serve each defendant health care provider with a notice of claim with an attached

screening certificate of merit executed under oath by a health care provider qualified as an expert

under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code

§ 55-7B-6.[5] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in

---

[5]  West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical
professional liability action against any health care provider without complying the
provisions of this section.

14

federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see

Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice

liability cap applies to claims brought against the United States under the FTCA). West Virginia

Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the

cause of action is based upon a well-established legal theory of liability which does not require expert

testimony supporting a breach of the applicable standard of care."

Mrs. Goforth's Complaint alleges that federal employees at FCP Alderson acted with medical

negligence in diagnosing and treating the injuries she sustained to her left hip, shoulder, and thoracic

spine. In its Motion to Dismiss, the United States contends that Mrs. Goforth's Complaint should be

dismissed because Mrs. Goforth failed to timely and properly file a notice of claim and a screening

certificate of merit pursuant to the MPLA. In Response to the United States' Motion, Mrs. Goforth

argues that "she repeatedly attempted to resolve healthcare issues through the only means available

---

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

to inmates which is the administrative process."[6] (Document No. 19, p. 1.) Therefore, Mrs. Goforth

argues that she should be excused from filing a screening certificate of merit based upon her filing

of administrative remedies. (Id.)

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases,

negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2,

Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required

"where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to

noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to

common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The

MPLA provides as follows concerning claims "based upon a well-established legal theory of

liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel,
> believes that no screening certificate of merit is necessary because the cause of
> action is based upon a well-established legal theory of liability which does not
> require expert testimony supporting a breach of the applicable standard of care, the

---

[6] Mrs. Goforth appears to allege that the MPLA improperly burdens her constitutional right of access to the court because the administrative process is the "only means available to inmates." The undersigned views Plaintiff's assertions as an "as-applied" challenge to the constitutionality of the MPLA. *See Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008); *Fisher v. King*, 232 F.3d 391, 396 (4th Cir. 2000)(considering inmates' contentions that a Virginia statutory exclusion of inmates from making requests for public records under the Virginia Freedom of Information Act is unconstitutional). It is well-established that indigent inmates have a constitutional right of access to the Courts. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Access to the Courts must be adequate, effective and meaningful under the Federal Constitution. *Bounds*, 430 U.S. at 822, 97 S.Ct. at 1495. The undersigned finds that Mrs. Goforth's right of access to the Courts is not burdened through the application of the MPLA in the context in which she finds herself. The MPLA does not exclude claims of inmates. Mrs. Goforth is as entitled and capable of proceeding in Court with a medical negligence claim as anyone else provided she provides a notice of claim and a certificate of merit in conformity with the statute. Accordingly, Mrs. Goforth's above "as-applied" constitutional challenge to the MPLA is without merit.

> claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

Unlike the facts in <u>Johnson</u>, Mrs. Goforth's allegations of medical negligence are complex and expert testimony is necessary. <u>See</u> <u>O'Neil v. United States</u>, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience). In the instant case, it appears that the medical staff at FCP Alderson evaluated, diagnosed, and provided treatment to Mrs. Goforth based upon her complaints of continuous pain in her hip, leg, and back. Mrs. Goforth, however, contends that medical staff improperly read the MRI report. Specifically, Mrs. Goforth complains that she was suffering from a bulging disc and medical staff negligently reported that her MRI results were normal. Expert testimony is necessary to support any finding that the medical treatment provided by the staff at FCP Alderson fell below the applicable standard of care. The undersigned finds that the reading of an MRI and treatment options for a

bulging disc, are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Mrs. Goforth is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). To the extent that Ms. Goforth has stated a claim under the FTCA, the undersigned recommends that Mrs. Goforth's claims be dismissed because there is nothing in Mrs. Goforth's Complaint or exhibits indicating that she complied with the requirements of West Virginia Code § 55-7B-6.

###   3.        Mr. Goforth's FTCA Claim – Exhaustion of Administrative Remedies:

The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a)[7]. See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986), Muth v. United States, 1 F.3d 246 (4th Cir. 1993). Thus, before an individual can bring a claim under the Federal Tort Claims Act, the individual must

---

[7] Title 28 U.S.C. § 2675(a) provides that

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11[8] and 543.30 to 543.32. The administrative process which individuals must exhaust when they have complaints under the Federal Tort Claims Act is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the individual must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the individual's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the individual's claim. If the agency denies the individual's claim, he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a).

The United States argues that Mr. Goforth's claim for loss of consortium should be dismissed for failure to exhaust. (Document No. 15.) Specifically, the United States contends that Mr. Goforth "has filed no administrative tort claim, and therefore the court lacks subject matter jurisdiction over any claims of his including loss of consortium." (Id., p. 3.) In DuPont v. United States, 980 F.Supp. 192, 196 (S.D.W.Va. Nov. 3, 1997), this Court recognized that a loss of consortium claim is an independent cause of action, which the FTCA requires to be submitted for administrative determination prior to bringing the claim to federal court. DuPont v. United States, 980 F.Supp. 192, 196 (S.D.W.Va. Nov. 3, 1997)(stating that Mr. DuPont failed to exhaust where there was "no

---

[8] Title 28 C.F.R. § 14.2(a) provides that

a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain . . . for personal injury . . . alleged to have occurred by reason of the incident[.]

evidence that Mr. DuPont joined Mrs. DuPont's administrative claim, and a spouse may not presume that his or her own independent claim is automatically raised or implied in the administrative claim of the other spouse.") Based upon a review of the record, it is undisputed that Mr. Goforth failed to file an administrative tort claim prior to filing the instant action. Accordingly, the undersigned finds that Mr. Goforth's claim must be dismissed for failure to exhaust.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' Motion to Dismiss (Document No. 15.), **DISMISS** Plaintiffs' Complaint (Document No. 1.) as to the United States, and **REFER** this matter back to the undersigned for further proceedings regarding Mrs. Goforth's Bivens claim.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v.

Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright

v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this

Magistrate Judge.

      The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and

to mail a copy of the same to Plaintiff, who is acting *pro se*.

      Date: August 31, 2010.

R. Clarke VanDervort
United States Magistrate Judge