## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **VIRGINIA ARLENE GOFORTH,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Civil Action No. 1:09-0003** |
| | ) | |
| **UNITED STATES OF AMERICA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment (Document No. 37.), filed on August 13, 2010. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by Defendants in moving to dismiss. (Document No. 39.) On October 15, 2010, Plaintiff filed her Response in Opposition to Defendants' Motion. (Document No. 49.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment should be granted.

### FACTUAL AND PROCEDURAL HISTORY

On January 5, 2009, Plaintiff, acting *pro se,* filed her Complaint in this matter claiming entitlement to monetary damages under 42 U.S.C. §1983.[1] (Document No. 1.) Plaintiff named the

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

following as Defendants: (1) the United States of America; (2) the Federal Bureau of Prisons; (3) United States Attorney General, Michael B. Mukasey; (4) United States Inspector General; (5) Harley G. Lappin, Director of Bureau of Prisons; (6) Newton Kendig, Bureau of Prisons Medical Director; (7) Amber Nelson, Warden, Alderson Federal Prison Camp; (8) Alice Lowe, Associate Warden; (9) Alan Blankenship, Health Administrator of Health Services Unit; (10)Neal Rehburg, Doctor of Osteopathy; (11) Debra Hickey, 2006 Warden; (12) Donna Saffold, 2006 Associate Warden; (13) Vicki Dupree, Captain; (14) J. Engleman, Unit Manager; (15) Cynthia Godbold, 2006 Unit Manager; (16) the United States Department of Justice; and (17) the United States Sentencing Guideline Commission. (Id.) Plaintiff alleges that the conditions of confinement at FPC Alderson resulted in cruel and unusual punishment.[2] During her incarceration at FPC Alderson, Plaintiff contends that Defendants acted with deliberate indifference concerning her medical care and overall well-being. Specifically, Plaintiff asserts that Defendants acted with negligence and deliberate indifference concerning the following: (1) Proper nutrition; (2) Skin lesion on Plaintiff's nose; (3) Injury to Plaintiff's left hip, shoulder, and thoracic spine as a result of a slip and fall; (4) Proper dental care; (5) Drug withdrawals by prisoners; (6) Administration of vitamin B12 injections on a regular schedule; (7) Treatment of health problems disclosed upon arrival at FPC Alderson; and (8) Complaints of pain and suffering. (Id., pp. 4 - 5.) Plaintiff claims that BOP staff are "carelessly and openly negligent resulting in many accidents . . . this coupled with brazen willful indifferent attitude, and them against us mentality, results in constructive and actual punishment over and over." (Id., p. 12.) Plaintiff alleges that the "deprivation of proper food, exercise (rehabilitative), medical care,

---

[2] The Bureau of Prisons' Inmate Locator indicates that Mrs. Goforth was released from custody on December 11, 2008.

and reasonable safety, and the deliberate indifference of the defendants (staff) in concern to these and other deprivation, is explicitly the type of conduct forbidden by the 8th Amendment." (Id., p. 20.) As a result of the above, Plaintiff contends that she "suffered and suffers yet, from pain, fatigue, and emotional grief and stress." (Id., p. 12.) Plaintiff requests "$2.9 million dollars in relief" and "seeks punitive damages in the amount of $1.9 million dollars, to discourage future willful indifference, negligence, and cruel misconduct." (Id., p. 24.)

In screening Plaintiff's Complaint, the undersigned determined that Plaintiff had potentially stated a claim under the Federal Tort Claims Act [FTCA], 28 U.S.C. § 1346(b)(1) and 28 U.S.C. § 2671, *et seq*., but failed to state a cognizable claim under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (Document No. 6.) By Order entered on August 11, 2009, the undersigned granted Plaintiffs' Application to Proceed Without Prepayment of Fees and ordered the Clerk to issue a Summons requiring the United States to answer or otherwise respond to Plaintiff's FTCA claim based upon her alleged slip and fall at FPC Alderson. (Id.) By Proposed Findings and Recommendation also entered on August 11, 2009, the undersigned recommended that Plaintiffs' Bivens claims be dismissed. (Document No. 7.)

On August 27, 2009, Plaintiff timely filed her "Response to Proposed Findings and Recommendations." (Document Nos. 12 and 13.) In her Response, Plaintiff stated that she agreed to the following: (1) "Plaintiff, under 42 U.S.C. 1983, agrees to withdraw the following defendants under the Court's recommendation: Federal Bureau of Prisons, U.S. Attorney General, Inspector General, U.S. Department of Justice, U.S. Sentencing Commission, and the United States of America;" and (2) "Plaintiff agrees with the Court to proceed with FTCA claim against the United

States of America withdrawing all other defendants." (Id.) Further, Plaintiff stated additional facts in support of her Bivens claim and continued to argue that she was subjected to cruel and unusual punishment in violation of the Eighth Amendment. (Id., pp. 3 - 13.)

By Memorandum Opinion and Order entered on April 14, 2010, United States District Judge David A. Faber adopted the undersigned's recommendation in part and referred the matter back to the undersigned for reconsideration of Plaintiff's Bivens claim in light of the additional facts provided by Plaintiff in her Response. (Document No. 22.) Accordingly, the undersigned considered the additional factual information set forth in Plaintiff's Response and determined that she potentially stated a Bivens claim by contending that her Eighth Amendment right had been violated. (Document No. 23.) Specifically, the undersigned found as follows:

> Essentially, Plaintiff claims that Defendants knowingly delayed proper medical and psychological treatment. Although Plaintiff continuously sought medical treatment for injuries sustained in a fall at FPC Alderson, Plaintiff alleges that Defendants improperly delayed the ordering of x-rays and an MRI. Plaintiff appears to contend that Defendants misinformed Plaintiff concerning the results of her MRI in an effort to negate their responsibility to provide appropriate treatment. Plaintiff further asserts that Defendants acted with deliberate indifference by failing to provide her with a medical van pass and psychological treatment. Finally, Plaintiff claims that her vitamin B12 injection was improperly delayed by more than three months. As a result of the above, Plaintiff alleges that she was forced to endure unnecessary pain and suffering and mental distress. The allegations, which must be taken as true at this point, suggest that Defendants acted with deliberate indifference to Plaintiff's serious medical condition. The Court therefore finds that Plaintiff is claiming that Defendants violated her rights under the Eighth Amendment and her claim is remediable under Bivens.

By Order entered on May 10, 2010, the undersigned directed the Clerk to send the Summonses to Plaintiff and Plaintiff to serve the Summonses and Complaint pursuant to Rule 4(i) of the Federal Rules of Civil Procedure upon the following Defendants: (1) Harley G. Lappin, Director of Bureau of Prisons; (2) Newton Kendig, Bureau of Prisons Medical Director; (3) Amber Nelson, Warden of

Alderson Federal Prison Camp; (4) Alice Lowe, Associate Warden; (5) Alan Blankenship, Health Administrator of Health Services Unit; (6) Neal Rehburg, Doctor of Osteopathy; (7) Debra Hickey, 2006 Warden; (8) Donna Saffold, 2006 Associate Warden; (9) Vicki Dupree, Captain; (10) J. Engleman, Unit Manager; and (11) Cynthia Godbold, 2006 Unit Manager. (Document Nos. 23 and 24.)

On August 13, 2010, Defendants filed a Motion to Dismiss, or in the Alternative Motion for Summary Judgment and Memorandum in Support. (Document Nos. 37 and 38.) Defendants argue that Plaintiff's Complaint should be dismissed because (1) "Plaintiff's service of process is insufficient" (Document No. 38, pp. 3 - 4.); (2) "Plaintiff failed to exhaust administrative remedies with regard to all of her claims" (Id., pp. 4 - 6.); (3) "Defendant Blankenship is a U.S. Public Health Service Employee and is therefore entitled to absolute immunity" (Id., pp. 6 - 7.); (4) "The lack of specific allegations against Defendants requires dismissal" (Id., p. 7.); (5) "There is no personal jurisdiction over Defendants Lappin and Kendig" (Id., pp. 7 - 10.); (6) "Claims barred by the applicable statute of limitations" (Id., pp. 10 - 11.); (7) "Plaintiff cannot establish a claim for deliberate indifference to her medical condition" (Id., pp. 11 - 22.); (8) "The Defendants are entitled to qualified immunity" (Id., pp. 22 - 28.); and (9) "Plaintiff's claims against the Defendants in their official capacities are barred by sovereign immunity" (Id., pp. 28 - 29.).

In support of their Motion, Defendants attach the following Exhibits: (1) The Declaration of Sharon Wahl (Document No. 37-1.); (2) Copy of Plaintiff's Administrative Remedy History (Document No. 37-2.); (3) Copy of filings regarding Administrative Remedy No. 444836 (Document No. 37-3.); (4) Copy of filings regarding Administrative Remedy No. 457971 (Document No. 37-4.); (5) Copy of filings regarding Administrative Remedy No. 467135

(Document No. 37-5.); (6) Copy of filings regarding Administrative Remedy No. 478688 (Document No. 37-6.); (7) The Declaration of Neal Reherg, D.O. (Document No. 37-7.); (8) Copy of Plaintiff's medical records (Document Nos. 37-8 and 37-9.); (9) Copy of the "Inmate Injury Assessment and Followup" dated November 9, 2007 (Document No. 37-10); (10) Copy of Plaintiff's "Inmate Requests to Staff" and Response (Document No. 37-11, pp. 1 - 21.); (11) Copy of Plaintiff's "Idle, Convalescent and Change in Work Classification Status" sheets (Id., pp. 22 - 45.); (12) Copy of "Notification to Inmate" regarding MRI results (Document No. 37-12.); (13) Copy of Plaintiff's "Medication Profile Sheet" (Document No. 37-13.); and (14) The Declaration of Amber Nelson (Document No. 37-14.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 16, 2010, advising her of the right to file a response to the Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment. (Document No. 39.) On October 15, 2010, Plaintiff filed her "Response to Motion to Dismiss and Summary Judgment" (Document No. 49.) and Memorandum of Law (Document No. 49-3.) First, Plaintiff appears to challenge the Declaration of Defendant Rehburg and Nelson. (Document No. 49, pp. 1 - 3.) Plaintiff states that Defendant Rehburg's declaration needs "much clarification . . . . because the declarant has purposely chosen to omit information directly pertinent to Plaintiff's complaint." (Id., p. 3.) Second, Plaintiff argues that "all Defendants of this suit were properly and timely served." (Id., p. 4.) Third, Plaintiff "denies she has failed to exhaust any available remedy given her." (Id.) Fourth, Plaintiff contends that Defendant Blankenship is not entitled to absolute immunity because "[t]his degree of immunity is conferred only to judges, legislators, and prosecutors." (Id., pp. 4 - 5.) Fifth, Plaintiff states that all named [Defendants] had personal and direct actions in the harm caused to plaintiff." (Id., pp. 5 -

6

10.) Sixth, Plaintiff asserts that there is personal jurisdiction of Defendants Lappin and Kendig because they "have more than 'minimal contact' with the venue of West Virginia" and "both purposely availed themselves to the privilege of conducting activities in West Virginia." (Id., pp. 10 - 11.) Seventh, Plaintiff claims are not barred by the statute of limitations because "the time of right did not accrue until the exhaustion, plus 180 days." (Id., p. 11.) Eighth, Plaintiff argues that Defendants exhibited a "habitual pattern" of deliberate indifference as "Plaintiff requested assistance with her condition and relief from her pain, in various different ways and methods not less than 69 times via sick call and mainline (informal) and a documented 16 times via administrative remedy (formal) for a total of not less than 85 times, and was granted no relief." (Id., p. 12.) Ninth, Plaintiff contends that Defendants are not entitled to qualified immunity because "a reasonable officer would conclude from more than 85 pleas for help that an inmate was enduring cruel and unusual hardship; equally a reasonable officer or any person of reason would know to leave such suffering unaided is a violation of their rights to medical attention under law." (Id., p. 13.) Finally, Plaintiff asserts that Defendants are not entitled to sovereign immunity because "the officers were named individually for Bivens purposes and their liability is personal as they committed personal acts." (Id., p. 14.)

In support of her Response, Plaintiff attaches the following Exhibits: (1) A copy of her Medical Reports, "Chronological Record of Medical Care," and "Bureau of Prisons Health Services Clinical Encounter" sheets (Document No. 49-1, pp. 1 - 14.); (2) Copy of Program States 6013.01 (Id., p. 15.); (3) A copy of information concerning the medication Topamax retrieved from Topamax.com (Id., pp. 16 - 19.); (4) A copy of information concerning the medication Depakote retrieved from WedMed.com (Id., pp. 20 - 22.); (5) A copy of Rule 4 of the Federal Rules of Civil Procedure (Id., pp. 23 - 24.); (6) A copy of a document discussing qualified and absolute immunity

(Id., p. 25.); (7) A copy of Program Statement 6027.01 (Id., p. 26.); (8) A copy of documents concerning Administrative Remedy No. 444836 (Id., pp. 27 - 33.); (9) A copy of documents concerning Administrative Remedy No. 457971 (Id., pp. 34 - 39.); (10) A copy of documents concerning Administrative Remedy No. 467135 (Id., pp. 40 - 45.); (11) A copy of documents concerning Administrative Remedy No. 478688 (Id., pp. 46 - 51.); (12) A "list of dates/times/persons who [Plaintiff] tried to get resolution to medical (injury) problems" (Document No. 49-2, pp. 1 - 17.); (13) Plaintiff's summary of facts concerning her review of community confinement (Id., p. 18.); (14) A copy of "The Federal Bureau of Prison's Efforts to Manage Inmate Health Care" from the U.S. Department of Justice Office of the Inspector General Audit Division dated February 2008 (Id., pp. 19 - 24.); (15) A copy of Program Statement 1320.06 (Id., pp. 43 - 50.); (16) A copy of the standards of care policy concerning "Medical/Dental Care" (Id., pp. 51 - 53.); (17) A copy of Section 10.10 of the Federal Criminal and Civil Remedies for Unconstitutional Conduct (Id., p. 54.); and (18) A copy of information concerning the 'First Amendment to the United States Constitution" obtained from Wikipedia (Id., p. 55 - 56.).

## FACTUAL HISTORY

Based upon a review of the record it appears that Plaintiff arrived at FPC Alderson on May 3, 2006, and an intake screening was completed. (Document No. 37-9, pp. 41 - 42.) During the intake screening, it was noted that Plaintiff had no "present medical, dental, or mental complaints." (Id., p. 41.) On May 10, 2006, it was noted that Plaintiff had the following medical problems: (1) asthmatic bronchitis; (2) history of diabetes mellitus (in remission); (3) left thoracic outlet syndrome; (4) repetitive motion disorder; (5) history of disc herniation at C5-C6; (6) cerebrovascular accident [CVA] secondary to adverse drug reactions; (7) B12 deficiency secondary to gastric bypass;

(8) vertigo; and (8) migraine secondary to CVA. (Id., p. 39.) On May 17, 2006, comprehensive lab work was conducted. (Id., p. 40.) On May 25, 2006, Plaintiff reported to sick call complaining of "exacerbation of repetitive motion disorder" and "exacerbation of chronic spasm condition." (Id., pp. 36 - 38.) After examining Plaintiff, Nurse Jennifer Piner ordered that Plaintiff be seen within 1 to 2 weeks. (Id.) On June 12, 2006, Plaintiff reported to sick call complaining of "muscle spasms that extend from right neck to right shoulder to right shoulder blade, aggravated by repetitive motions." (Id., p. 34.) Plaintiff was evaluated by Physician Assistant [P.A.] Dana Renick and Dr. Angela Basham-Callaway, who determined that the "muscle spasms were secondary to multiple diagnoses on patient's problem list" and restrictions were submitted. (Id.) From June 16, 2006, to October 16, 2006, Plaintiff reported to sick call for various complaints, including a "plantar wart on left foot" (Id., pp. 32 - 33.), "skin cancer on nose" (Id., pp. 30 - 31.), "need refill for vertigo" medication (Id., pp. 27 - 29.), migraine headache (Id., pp. 25 - 26.), "vomiting and dizzy" (Id., pp. 17 - 18.), "pain in left back of head with weakness on left side" (Id., pp. 13- 16.), and "need prescription refilled for Estrace and Plavix" (Id., pp. 6 - 7.). Plaintiff was evaluated by Dr. Basham-Callaway in the Chronic Care Clinic on August 10, 2006 (Id., pp. 22- 23.), September 15, 2006 (Id., p. 12.), and September 18, 2006 (Id., pp. 8, 10 - 11.).

On November 7, 2006, an injury assessment was completed after Plaintiff allegedly fell while returning to her work station. (Document No. 37-7, p. 2.) On November 8, 2006, Plaintiff reported that her "back was very stiff from injury yesterday" and requested a work idle and van pass. (Document No. 37-9, p. 5.) P.A. Lauren DelTurco examined Plaintiff noting that her leg strength was intact and diagnosed Plaintiff with "acute back strain." (Id.) P.A. DelTurco prescribed ibuprofen 800 mg, advised Plaintiff to apply ice and moist heat, and ordered a convalescence for one week and

a temporary van pass. (Id.) On November 9, 2006, Plaintiff reported to sick call complaining of pain and a "possible herniated disc." (Id., p. 2.) Plaintiff was referred to Dr. Basham-Callaway, who evaluated Plaintiff that day. (Id., p. 1) Plaintiff reported that she was having "pain in the left hip and lower back" after she "fell, twisted to the left and landed on her left buttock." (Id.) Dr. Basham-Callaway noted that palpation of the left hip and lower back was painful, but that there was "no bruising" and "straight leg raising test was negative." (Id.) Dr. Basham-Callaway directed Plaintiff to continue taking ibuprofen, applying heat to the area, and follow-up in one week. Plaintiff was issued a convalescence and a one week van pass. (Id.)

On November 14, 2006, Plaintiff reported to sick call complaining of "severe back/hip pain and unable to sleep due to pain." (Document No. 37-8, p. 51). Nurse Piner evaluated Plaintiff noting that she "complains of chronic back pain exacerbation ambulates with slow gait at times, [but] [o]bserved at pill lines with faster pace and posture." (Id.) Nurse Piner determined that there was "no sign of acute distress" and noted that Plaintiff was scheduled for a follow-up on November 17, 2006. (Id., p. 52.) On November 16, 2006, Plaintiff reported to sick call complaining of "severe back pain into chest/left rib/left hip" and requesting a renewed convalescence. (Id., p. 49.) Plaintiff was informed "of appointment tomorrow and gave convalescence for 24 hours." (Id., p. 50.)

On November 17, 2006, Plaintiff was evaluated by Dr. Basham-Callaway. (Id., p. 47.) Plaintiff rated her left hip and lower back pain as 9 out of 10 and explained that she had left leg "numbness extending all the way down to the foot." (Id.) Plaintiff reported that it "hurts to put weight on the left leg" so she borrowed a cane to help her ambulate. (Id.) Plaintiff was examined by Dr. Basham-Callaway, who determined that Plaintiff had "a positive straight-leg raising test on the left." (Id.) Dr. Basham-Callaway ordered x-rays of the left hip, lumbar and thoracic spine, and left

shoulder. (Id.) Dr. Basham-Callaway further prescribed ibuprofen 800 mg, ordered convalescent status for one month, and directed that Plaintiff be provided with a cane and cane pass. (Id., p. 48.) Finally, Dr. Basham-Callaway noted that Plaintiff was to follow-up in 30 days. (Id.)

On November 27, 2006, Plaintiff reported to sick call requesting that her van pass be renewed due to her back and left hip injury. (Id., p. 43.) Plaintiff was given a temporary van pass for two weeks and scheduled for a follow-up appointment on December 7, 2006. (Id., p. 44.) On December 1, 2006, the x-rays of Plaintiff's lumbar spine, right hip,[3] thoracic spine, and left shoulder were conducted. (Document No. 37-9, p. 62.) Plaintiff returned to sick call on December 4, 2006, complaining of left leg and back pain. (Document No. 37-8, p. 45.) Plaintiff was advised that she had a follow-up appointment scheduled for December 7, 2010. (Id., p. 46.)

On December 7, 2006, Plaintiff was seen by P.A. DelTurco for a follow-up appointment concerning her complaints of left shoulder pain, left hip pain, and back pain. (Id., p. 41.) Plaintiff indicated that the pain was better with ibuprofen and moist heat. (Id.) Upon examination, P.A. DelTurco indicated that Plaintiff had back tenderness, paraspinal muscle tenderness in the thoracic and lumbar spine, and the straight leg raising was negative. P.A. DelTurco noted that Plaintiff was "able to remove and put on shoes and socks." (Id.) Plaintiff's x-ray results were reviewed and it was noted that there was "no evidence of fracture or dislocation or vertebral compression. Mild arthritis." (Id.) P.A. DelTurco diagnosed Plaintiff with back and left hip strain and provided restrictions for 30 days. Plaintiff was instructed to continue use of moist heat, stretching, progressive exercise, and take Tylenol or ibuprofen for pain. (Id.)

_____

[3] Defendants argue that the "x-ray report incorrectly states 'right hip,' which is part of Plaintiff's complaint.

Plaintiff reported to sick call on December 19, 2006, complaining of "hip/leg/back pain" and rated her pain at 8 or 9 on a scale to 10. (Id., p. 40.) The nurse indicated that Plaintiff "requested a MRI and stated that she would like to see a doctor, not a PA or nurse practitioner." (Id.) The nurse noted that Plaintiff "ambulated to sick call at a brisk walk with a cane, with small limp." (Id.) An appointment was scheduled for December 28, 2006. (Id.) On December 27, 2006, Dr. Basham-Callaway reviewed the x-ray report regarding Plaintiff's lumbar spine, hip, thoracic spine, and left shoulder. (Document No. 37-9, p. 62.) The x-ray report revealed degenerative changes, but no evidence of fractures or dislocation. (Id.) On December 28, 2006, Plaintiff was evaluated by P.A. DelTurco. (Document No. 37-8, p. 39.) P.A. DelTurco noted that Plaintiff was ambulating with a cane, [but] gait much improved." (Id.) She also noted that Plaintiff was "adamant about being seen by a physician and having an MRI." (Id.) Plaintiff was diagnosed with back pain, instructed to continue use of ibuprofen 800 mg for pain, and her restrictions were extended. (Id.) P.A. DelTurco indicated that a physician consult was requested and x-rays were reviewed. (Id.) On January 16, 2007, Plaintiff was evaluated in the Chronic Care Clinic and it was noted that her "gait was near normal." (Id., p. 36.)

On February 6, 2007, Plaintiff reported to sick call complaining of "left leg/hip pain, foot cold/numb, and pain into mid femur." (Id., p. 34.) The nurse noted that Plaintiff's "foot was warm, pedal pulse present, no swelling noted." (Id.) An appointment was scheduled for February 20, 2007, to evaluate Plaintiff's complaint of a "cold foot." (Id., p. 35.) On February 20, 2007, Plaintiff was evaluated by Nurse Practitioner Charlene M. Kegg. (Id., p. 33.) Plaintiff complained of "left hip/femur pain" that "gets worse with ambulating." (Id.) Plaintiff acknowledged that the "pain was relieved somewhat with Motrin." (Id.) Upon examination, Nurse Practitioner Kegg noted no

12

weakness in Plaintiff's leg. (Id.) Nurse Practitioner Kegg ordered repeat x-rays of Plaintiff's left hip and femur and directed that Plaintiff use over-the-counter pain relievers as necessary. (Id.) On March 20, 2007, Dr. Basham-Callaway reviewed the x-ray report, which stated that "[t]he hip and knee joints are maintained. No fracture is identified. The mineralization appears to be normal." (Document No. 37-9, p. 60.)

On March 27, 2007, Plaintiff reported to sick call complaining of "rib/back/hip pain" that "for the last two - three weeks is not relieved by over-the-counter medication, ibuprofen 800 mg twice daily, and Tylenol 600 mg in between every four hours." (Document No. 37-8, p. 31.) Nurse Piner noted that Plaintiff "ambulates with a cane, has normal gait and pace" with "no facial grimacing." (Id., pp. 31 - 32.) Nurse Piner instructed Plaintiff "to discuss this at the next Chronic Care Clinic." (Id., p. 32.) On April 12, 2007, Plaintiff was evaluated in the Chronic Care Clinic by Dr. Basham-Callaway, who noted that Plaintiff "walks with an otalgic gait." (Id., pp. 29 - 30.) Dr. Basham-Callaway diagnosed Plaintiff with chronic low back and hip pain, requested an MRI of her lumbosacral spine, and prescribed ibuprofen 800 mg three times a day. (Id., p. 30.) Dr. Basham-Callaway noted that the MRI was completed on May 30, 2007. (Id., p. 25.) On June 7, 2007, Dr. Basham-Callaway reviewed the MRI report, which revealed "degenerative disc disease L2-3; a mild annular bulge at L3-4 on the left, to a lesser extent at L2-3" (Document No. 37-9, p. 61.) The report indicated that there was no evidence of nerve root impingement. (Id.) On June 8, 2007, Plaintiff received a "Notification to Inmate," which stated that the MRI "[s]tudies were found to be normal." (Document No. 37-12.)

On July 13, 2007, Plaintiff reported to sick call requesting refills of her medications and a chronic care appointment. (Document No. 37-8, p. 22.) Plaintiff's medications were refilled and she

was scheduled for the next chronic care clinic. (Id.) On August 6, 2007, Plaintiff reported to sick call complaining of "severe left hip/leg pain." (Id., p. 19.) Registered Nurse Michelle Malesky noted that Plaintiff denied recent injuries and was "walking with cane without assistance." (Id.) Nurse Malesky issued a two week convalescence and instructed Plaintiff to apply warm moist heat and take ibuprofen for pain. An appointment was scheduled for August 20, 2007. (Id., p. 20.) On August 20, 2007, Plaintiff was evaluated by Defendant Neal Rehburg in the Chronic Care Clinic. (Id., pp. 17 - 18.) No abnormalities were found and an additional x-ray of Plaintiff's hips was requested. (Id., p. 17.) Defendant Rehburg prescribed medications, including B12. (Id., p. 18.) On August 30, 2007, it was noted that the x-ray of the left hip indicated a "possible lucency in the femoral head and an MRI was recommended." (Document No. 37-9, p. 59.) On October 30, 2007, an MRI of the left hip revealed no evidence of fracture, dislocation, avascular necrosis or significant joint effusion. (Id., p. 58.) A tiny cyst was noted in the region of the head of the humerus. (Id.)

On February 7, 2008, Plaintiff was evaluated by Dr. Richard Ramirez in the Chronic Care Clinic. (Document No. 37-8, pp. 10 - 11.) Dr. Ramirez failed to note any changes to Plaintiff's treatment plan. (Id.) On March 13, 2008, Nurse Malesky noted that P.A. Renick "ordered B12 and folate levels, as the B12 injections had expired." (Id., p. 9.) On April 14, 2008, Plaintiff reported to sick call requesting a medication refill for Zoloft and a B12 injection. (Id., pp. 7 - 8.) The nurse noted that the Zoloft would be renewed, but that Plaintiff's "B12 and folic levels were stable and the order was not renewed by Dr. Ramirez." (Id., p. 7.) The nurse instructed Plaintiff that she would be re-evaluated at the next Chronic Care Clinic. (Id.) On June 5, 2008, Defendant Rehburg renewed Plaintiff's prescriptions, including the B12 (Cyanocobalamin) injections. (Document No. 37-13.)

On August 29, 2008, Plaintiff was evaluated by Defendant Rehburg in the Chronic Care

Clinic. (Document No. 37-8, p. 6.) Plaintiff complained that "[l]eft hip is a problem with a fall and now has a limp. X-rays have not helped with diagnosis. She has steady, constant pain." (Id., p. 5.) It was further noted that Plaintiff had a "guarded gait." (Id., p. 4.) Plaintiff was instructed to follow-up at sick call and chronic care as needed. (Id., p. 3.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a pro se Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.

15

Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## **DISCUSSION**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause

of the Fifth Amendment.) A <u>Bivens</u> action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[4] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

---

[4]  Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4ᵗʰ Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

17

A.      __Insufficient Service of Process__.

Defendants argue that "Plaintiff's service of process is insufficient." (Document No. 38, p.

3.) Specifically, Defendants state that "Plaintiff has failed to comply with the Court's Order of May

10, 2010, and the requirements of Fed. R. Civ. P. 4(i.)." (Id., pp. 3 - 4.) Plaintiff argues that "all

Defendants of this suit were properly and timely served." (Document No. 49, p. 4.) Plaintiff states

that "the Clerk personally directed a certified copy to the Attorney General." (Id.) Plaintiff contends

that she "was granted IFP status and therefore entitled to rely upon court officers to effect service

upon the defendants."[5] (Id.)

When sufficiency of service is raised as a defense under Rule of Civil Procedure 12(b)(5),

the plaintiff has the burden of establishing that service of process has been effectuated in conformity

with Rule 4. See Wolfe v. Green, 660 F.Supp.2d 738, 750 (S.D.W.Va. 2009). When it is evident that

a party has failed to accomplish service of process pursuant to Rule 4, dismissal is in order. Rule of

Federal Rule of Civil Procedure 4(i)(1) and (3) state how a party must serve a Summons and

Complaint upon the Untied States, its agencies, corporations, officers or employees as follows:

> (1)    **United States.** To serve the United States, a party must:
> (A)(i)  deliver a copy of the summons and of the complaint to the United
> States attorney for the district where the action is brought – or to an
> assistant United States attorney or clerical employee whom the
> United States attorney designates in a writing filed with the court
> clerk – or
> (ii)   send a copy of each by registered or certified mail to the civil-
> process clerk at the United States attorney's office;
> (B)    send a copy of each by registered or certified mail to that Attorney
> General of the United States at Washington, D.C.; and

---

[5]    Although Plaintiff is proceeding *in forma pauperis*, the Court finds that it is her
responsibility to ensure proper service of process. By Order dated May 10, 2010, the undersigned
directed Plaintiff to serve the Summonses and Complaint upon Defendants pursuant to Rule 4(i) of
the Federal Rules of Civil Procedure. (Document No. 24.)

      (C)      if the action challenges an order of the non-party agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

* * *

    (3)    **Officer or Employee Sued Individually.** To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).

Federal Rule of Civil Procedure 4(e)[6] states a follows:

    **(e)**    **Servicing an Individual Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual - - other than a minor, an incompetent person, or a person whose waiver has been filed - - may be served in a judicial district of the United States by:

        (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

        (2) doing any of the following:

            (A) delivering a copy of the summons and of the complaint to the individual personally;

            (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

            (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Federal Rule of Civil Procedure 4(m) requires that service of a summons and complaint be made upon a defendant within 120 days of the filing of the complaint. Dismissal of the complaint without

---

      [6] Rule 4(f) provides for service of an individual in a foreign country and Rule 4(g) provides for service of a minor or incompetent person.

19

prejudice is required upon the plaintiff's failure to accomplish service of process within 120 days

unless the plaintiff can show good cause why service was not made within that period. Additionally,

when the United States, its agencies, officers and employees are defendants, Federal Rule of Civil

Procedure 4(i)(4) allows for an extension of time to complete service of process when a party has

failed to do so in certain respects as follows:

> The Court must allow a party a reasonable time to cure its failure to:
>
> (A)    serve a person required to be served under Rule 4(i)(2), if the party
>        has served either the United States attorney or the Attorney General
>        of the United States; or
>
> (B)    serve the United States under Rule 4(i)(3), if the party has served the
>        United States officer or employee.

It is evident in the record that Plaintiff did not comply with the foregoing rules in attempting

to serve each individual Defendant because she did not personally serve a copy of the Summons and

the Complaint upon each Defendant. Rather, Plaintiff attempted to serve each individual Defendant

by delivering a copy of the Summons and the Complaint by certified mail. (Document Nos. 27, 28,

30.) Plaintiff has not shown that she took other steps to effectuate service of process upon each

individual Defendant. It further does not appear that Plaintiff should be allowed a reasonable time

to cure her failure to serve individual Defendants as the Rules require because the conditions

specified in Rule 4(i)(4)(A) and (B) have not been met. Accordingly, Defendants' Motion to Dismiss

should be granted. Notwithstanding the above finding, the undersigned will consider the merits of

Plaintiff's claims.

**B.    Exhaustion of Administrative Remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust

available administrative remedies prior to filing civil actions though the administrative process may

not afford them the relief they might obtain through civil proceedings.[7] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims

---

[7] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

she raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court....The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that she has exhausted her administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had

available remedies which she did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir.

2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing

a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have

the burden of pleading and proving." (Citations omitted))

For Bivens purposes, proper exhaustion of available administrative remedies requires that

"a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's

administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see

Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper

exhaustion demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some orderly structure

on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an

Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek

formal review of issues or complaints relating to confinement. Depending upon at what level an

inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance

procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints

informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13.

The inmate's request may be rejected if improper, and the inmate will then be advised of the proper

administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject

of the inmate's complaints, the inmate must complete this first step and submit a formal

"Administrative Remedy Request" on a BP-9 form to an institution staff member designated to

receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the

appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional

Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants acknowledge that Plaintiff "properly exhausted her administrative remedies at all three levels on the issues regarding her medical conditions and treatment, her misinformation regarding her MRI results, and the van passes." (Document No. 38, p. 5.) Defendants, however, contend that Plaintiff did not fully exhaust her administrative remedies regarding the alleged failure to provide B12 injections, proper nutrition, and psychological treatment. (Id.) Defendants therefore argue that Plaintiff's claims concerning B12 injections, proper nutrition, and psychological treatment should be dismissed with prejudice. (Id.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 37-1.) Ms. Wahl states that "[t]he Beckley Consolidated

24

Legal Center oversees legal matters arising at various Bureau of Prisons (BOP) institutions, including the Federal Prison Camp, Alderson, West Virginia (FPC Alderson)." (<u>Id.</u>, p. 1.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (<u>Id.</u>) Ms. Wahl explains that she also has access to inmates' central files and medical records. (<u>Id.</u>) Specifically, Ms. Wahl states as follows in her Declaration (<u>Id.</u>, p. 2.):

> 9.  Plaintiff filed a total of 17 administrative remedy requests during her incarceration.
>
> 10.  A review of Plaintiff's remedy history reveals that she filed administrative remedies at all three levels regarding: (1) improper medical care for her back and hip as alleged in her complaint and requests for x-rays and MRI (Remedy ID 444836-F1, R1, A1, A2); (2) incorrect information given to her regarding her MRI results (Remedy ID 457971-F1, R1, A1); (3) requesting medical van passes (Remedy ID 467135-F1, R1, A1); and (4) requesting a list of written criteria making one eligible to ride the medical van (Remedy ID 478688-F1, R1, A1).
>
>                    * * *
>
> 12.  Plaintiff's claims were reviewed, investigated, and responded to at each level.
>
> 13.  Plaintiff did not exhaust administrative remedies with regard to her claims about the B12 injections or proper nutrition.
>
> 14.  Plaintiff did not exhaust administrative remedies regarding any request for, or delay of, psychological treatment.
>
> 15.  These issues are not addressed in the remedies previously identified, and are not the subject to Plaintiff's only other remedy (regarding typewriters) appearing on her administrative remedy summary.

In response, Plaintiff states that she "denies she has failed to exhaust any available remedy given her, which is evidenced by Defendants' Exhibit 1, atth. A . . . However, the *pro se* Plaintiff requests that should the court find any unintentional failure upon her part, that the court stay the

claims on its docket rather than dismissing them."[8] (Document No. 49. 4.) In support, Plaintiff

attaches copies of the following: (1) A copy of Plaintiff's "Request for Administrative Remedy"

dated February 27, 2007, concerning her claim of improper medical care for her back and hip and

requests for x-rays and MRI (Remedy No. 444836-F1) (Id., pp. 27 - 28.); (2) A copy of Warden

Hickey's "Response to Administrative Remedy # 444836-F1" dated April 3, 2007 (Id., p. 29.); (3)

A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated April 11, 2007 (Remedy No.

444836-R1) (Id., p. 30.); (4) A copy of Regional Director K.M. White's "Administrative Remedy

Regional Appeal Response" dated June 5, 2007 (Remedy No. 444836-R1) (Id., p. 31.); (5) A copy

of Plaintiff's "Central Office Administrative Remedy Appeal" dated June 25, 2007 (Remedy No.

444836-A2) (Id., p. 32.); (6) A copy of Administrator Harrell Watts' Response dated September 25,

2007 (Remedy No. 444836-A2) (Id., p. 33.); (7) A copy of Plaintiff's "Request for Administrative

Remedy" dated June 25, 2007, alleging that she was provided inaccurate information concerning her

MRI results (Remedy No. 457971-F1) (Id., p. 34.); (8) A copy of Warden Nelson's "Response to

Administrative Remedy # 457971-F1" dated July 17, 2007 (Id., p. 35.); (9) A copy of Plaintiff's

"Regional Administrative Remedy Appeal" dated July 26, 2007 (Remedy No. 457971-R1) (Id., p.

36.); (10) A copy of Regional Director K.M. White's "Administrative Remedy Regional Appeal

Response dated September 17, 2007 (Remedy No. 457971-R1) (Id., p. 37.); (11) A copy of

Plaintiff's "Central Office Administrative Remedy Appeal" dated October 3, 2007 (Remedy No.

457971-A1) (Id., p. 38.); (12) A copy of Administrator Harrell Watts' Response dated December

14, 2007 (Remedy No. 457971-A1) (Id., p. 39.); (13) A copy of Plaintiff's Request for

---

[8] The undersigned notes that a stay would be futile as an inmate is required to submit a
formal "Administrative Remedy Request" within 20 days after the circumstances occurred which
are the submit of the inmate's complaints. 28 C.F.R. § 542.14(a).

Administrative Remedy" dated August 16, 2007, seeking a medical van pass (Remedy No. 467135-F1) (Id., p. 40.); (14) A copy of Warden Nelson's "Response to Administrative Remedy Case Number 467135-F1" dated October 12, 2007 (Id., p. 41.); (15) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated October 22, 2007 (Remedy No. 467135-R1) (Id., p. 42.); (16) A copy of Regional Director K.M. White's "Administrative Remedy Regional Appeal Response" dated December 6, 2007 (Remedy No. 467135-R1) (Id., p. 43.); (17) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated December 26, 2007 (Remedy No. 467135-A1) (Id., p. 44.); (18) A copy of Administrator Harrell Watts' Response dated February 28, 2008 (Remedy No. 467135-A1) (Id., p. 45.); (19) A copy of Plaintiff's "Request for Administrative Remedy" dated January 8, 2008, requesting the written criteria for an inmate to be eligible for a medical van pass (Remedy No. 478688-F1) (Id., p. 46.); (20) A copy of Acting Warden Alice Lowe's "Response to Administrative Remedy # 478688-F1" dated January 29, 2008 (Id., p. 47.); (21) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated February 4, 2008 (Remedy No. 478688-R1) (Id., p. 48.); (22) A copy of Regional Director K.M. White's "Administrative Remedy Regional Appeal Response" dated February 26, 2008 (Remedy No. 478688-R1); (22) A copy of Plaintiff's "Central Office Administrative Remedy Appeal" dated March 12, 2008 (Remedy No. 478688-A1) (Id., p. 50.); (23) A copy of Administrator Harrell Watts' Response dated May 9, 2008 (Remedy No. 478688-A1) (Id., p. 51.).

Based on the foregoing, the undersigned finds that Plaintiff fully exhausted her administrative remedies respecting Remedy Nos. 444836, 457971, 467135, and 478688. Thus, Plaintiff properly exhausted the following claims: (1) that the ordering of x-rays and an MRI was improperly delayed and she received inadequate medical treatment for her back and hip injury; (2)

that she was provided incorrect information concerning her MRI results, and (3) that she was improperly denied medical van passes. To the extent Plaintiff claims that she did not receive her B12 injections, proper nutrition, and psychological treatment, the undersigned finds that Plaintiff has not exhausted her administrative remedies. The record is void of any evidence that Plaintiff filed an administrative remedy request concerning her need for B12 injections, proper nutrition, or psychological treatment.[9] Accordingly, Plaintiff's claims regarding B12 injections, proper nutrition, and psychological treatment should be dismissed for failure to exhaust.

**C.**     **Defendant Blankenship is entitled to absolute immunity.**

In her Complaint, Plaintiff alleges that Defendant Blankenship, as the Administrative Director for the Health Services Unit at FPC Alderson, is "legally responsible for the overall operations of the Health Services Unit and the physical, mental health, and general welfare of all the detainees of Alderson Federal Prison Camp as well as the staff employed by the Health Services Unit." (Document No. 1, p. 10.) Defendant Blankenship argues that he is an United States Public Health Service employee and therefore is entitled to absolute immunity. (Document No. 38, pp. 6 - 7.) In support, Defendant Blankenship attaches the Declaration of Ms. Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 37-1, p. 2.) In her Declaration, Ms. Wahl states as follows:

---

[9] Plaintiff appears to argue that she did not have adequate time to exhaust her administrative remedies due to her release from custody. The undersigned, however, finds this claim to be without merit. Plaintiff was aware of her claim concerning the delay of providing B12 injections no later than May 1, 2008. (Document No. 13, p. 12.) Next, she was aware of her claim of improper nutrition no later than August 7, 2007. (Document No. 13, p. 7.) Finally, Plaintiff was aware of her claim concerning the lack of psychological treatment no later than August 28, 2007. (*Id.*, pp. 9 - 10.) The Court notes that Plaintiff was not released from custody until December 11, 2008. Accordingly, Plaintiff had more than adequate time to exhaust her administrative remedies concerning the above claims.

17.      Defendant James Blankenship, former FPC Alderson Health Services Administrator, was at all times relevant to this Complaint, a Commissioned Officer in the United States Public Health Service.

18.      He has been a Commissioned Officer since 1998, with no lapse in service.

19.      Thus, he was a Commissioned Officer during the time he worked at FPC Alderson.

(Id.) In Response, Plaintiff argues that Section 2679(b)(2)(A) of the Westfall Act provides "an explicit exception for constitutional violations" allowing a <u>Bivens</u> action against Public Health Services employees.

Title 42 U.S.C. § 233(a) provides as follows:

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. Recently, the United States Supreme Court upheld that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment." <u>Hui v. Castaneda</u>, ___ U.S. ___, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") The undersigned finds Plaintiff's

argument that 28 U.S.C. § 2679(b) provides an exception for "constitutional violations" to be

without merit.[10] In <u>Hui</u>, the above argument was considered and specifically rejected by the United

States Supreme Court. The Supreme Court stated as follows:

> Respondents' claim that the Westfall Act's *Bivens* exception, § 2679(b)(2)(A),
> directly preserves a *Bivens* action against PHS officers and employees is belied by
> the fact that the provision by its terms applies only to the specific immunity set forth
> in '[p]aragraph (1).' Moreover, if § 233(a) forecloses a *Bivens* action against PHS
> personnel, respondents' reading of § 2679(b)(2)(A) would effect an implied repeal
> of the more specific § 233(a). Repeals by implication are not favored and will not be
> presumed absent a clear and manifest legislative intent to repeal. *Hawaii v. Office of
> Hawaiian Affairs*, 556 U.S. __, 129 S.Ct. 1436, 1444 - 1445. Nothing suggests that
> Congress intended § 2679(b) to repeal § 233(a)'s more comprehensive immunity.

<u>Hui</u>, 130 S.Ct. at 1847-48. Based on the foregoing, the Court finds that Defendant Blankenship is

a Commissioned Officer in the United States Public Health Service and has absolute immunity from

suit for all claims arising from the medical care he provided to Plaintiff.

**D.      No evidence of deliberate indifference.**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing,

shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir.

1978), *rev'd on other grounds*, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

<u>See also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811

(1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials

to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take

---

[10]   "The Westfall Act amended the FTCA to make its remedy against the United States the
exclusive remedy for most claims against Government employees arising out of their official
conduct." *Hui*, 130 S.Ct. at 1851. Section 2679(b)(2) provides an exception for constitutional
violations. Specifically, Section 2679(b)(2) provides that immunity set forth in Section 2679(b)(1)
"does not extend or apply to a civil action against an employee of the Government . . . brought for
a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A).

reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

　　　To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or

31

a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the

applicable standard in <u>Miltier v. Beorn</u>, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference
> to a serious medical need, the treatment must be so grossly incompetent, inadequate
> or excessive as to shock the conscience or to be intolerable to fundamental fairness.
> * * * Deliberate indifference may be demonstrated by either actual intent or reckless
> disregard. * * * A defendant acts recklessly by disregarding a substantial risk of
> danger that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position. * * * Nevertheless, mere negligence
> or malpractice does not violate the eighth amendment. (Citations omitted)

See also <u>Sosebee v. Murphy</u>, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were

aware that inmate's condition had worsened and was life-threatening and intentionally ignored the

situation and refused to seek medical assistance provided a reasonable basis for finding deliberate

indifference to inmate's medical needs.); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978), <u>cert.</u>

<u>denied</u>, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay

in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to

his serious medical needs.); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for

defendants affirmed where claim that inmate received constitutionally inadequate medical treatment

involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must

first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and

resulting "serious or significant physical or mental injury" in order to maintain and prevail upon her

Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference,

Plaintiff must allege and prove each defendant's consciousness of the risk of harm to her. <u>See</u>

<u>Farmer</u>, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each

Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious

32

harm exists, and he must also draw the inference." <u>Farmer</u>, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. It is well established that a private physician under contract with a State to provide medical services to inmates acts under color of State law when treating them and may therefore be held liable under Section 1983. <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 54, 108 S.Ct. 2250, 2257, 101 L.Ed.2d 40 (1988); <u>Conner v. Donnelly</u>, 42 F.3d 220, 225 (4th Cir. 1994) ("If a physician treating a prisoner – whether by contract or referral – misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law.") Plaintiff in this case must therefore allege and establish that each Defendant was aware that she was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.[11]

### 1.   *Plaintiff's claim that Defendants improperly delayed the ordering of x-rays and an MRI.*

First, Plaintiff alleges that Defendants acted with deliberate indifference by providing improper medical treatment and delaying the ordering of x-rays and an MRI. Defendants contend that they are entitled to summary judgment because Plaintiff's Complaint contains broad, non-specific allegations and the record clearly shows that Plaintiff received timely and appropriate testing and treatment. Although Plaintiff appears to disagree with the diagnosis, Plaintiff

---

[11]   The undersigned notes that Plaintiff fails to set forth specific allegations against Defendants Lappin, Kendig, Dupree, Saffold, Engleman, and Goldbold. Thus, Plaintiff failed to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to her. *See Farmer, supra*, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege facts supporting her claim that the above Defendants knew of and disregarded an excessive risk to her health or safety. Further, there is no indication in the record that the above Defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, or that the Defendants drew that inference.

acknowledges that she was examined by medical staff following her fall on November 7, 2006. Plaintiff was further evaluated and examined by medical staff on November 8, 9, 14, 16, and 17, 2006. (Document No. 37-9, pp. 1-5 and Document No. 37-8, pp. 48 - 51.) On November 17, 2006, approximately ten days after Plaintiff's injury, Dr. Basham-Callaway ordered x-rays of Plaintiff's left shoulder, left hip, and back. (Document No. 37-8, p. 47.) The x-rays were conducted approximately two weeks later on December 1, 2006. (Document No. 37-9, p. 62.) The x-ray results revealed degenerative changes, but "no evidence of fracture or dislocation." (Id.) P.A. DelTurco reviewed the x-ray results with Plaintiff on December 7, 2006, less than a week after the x-rays were conducted. (Id., p. 41.) On February 20, 2007, Nurse Practitioner Kegg ordered additional x-rays of Plaintiff's back and left hip. (Id., p. 33.) The x-ray report revealed that "[t]he hip and knee joints are maintained. No fracture is identified. The mineralization appears to be normal." (Document No. 37-9, p. 60.) Approximately six weeks later on April 12, 2007, Dr. Basham-Callaway requested an MRI. (Document No. 37-8, pp. 30.) The MRI was conducted on May 30, 2007, and the results revealed "degenerative disc disease L2-3; a mild annular bulge at L3-4 on the left, to a lesser extent at L2-3." (Document No. 37-9, p. 61.) On August 20, 2007, Defendant Rehburg ordered a third x-ray of Plaintiff's hips.[12] (Document No. 37-8, p. 17.) The x-ray of the left hip revealed a "possible lucency in the femoral head and an MRI was recommended."[13] (Document No. 37-9, p. 59.)

---

[12] The medical records do not support Plaintiff's claim that Defendant Rehburg determined that Plaintiff's left hip "was definitely out of alignment" on August 20, 2007. (Document No. 37-8, p. 17.) Furthermore, there is no indication that Defendant Rehburg prescribed Topamax or Depakote as pain medications. (Id.)

[13] Specifically, the x-ray report stated as follows: "The hip joints are maintained. There is a vague lucency overlying the left hip, seen only on a single view. It is difficult to say whether it represents a femoral head or acetabular subchondral cyst." (Document No. 37-9, p. 59.)

Approximately two months later, a second MRI of Plaintiff's left hip and femur was performed and revealed no evidence of fracture, dislocation, avascular necrosis or significant joint effusion. (Document No. 37-9, p. 58.) A tiny cyst was noted in the region of the head of the humerus. (Id.)

Based upon the forgoing, the undersigned finds that Defendants did not act with deliberate indifference in ordering x-rays and MRIs or in providing treatment. Plaintiff was examined on the day of her injury and an injury assessment was completed. Plaintiff was evaluated approximately five times within the ten-day period following her injury, and x-rays of her left shoulder, left hip, and back were ordered by Dr. Basham-Callaway. Although the initial x-ray report incorrectly stated "right hip," medical staff verified that the x-ray was actually taken of the left hip and a second x-ray was subsequently performed.[14] In the 12 month period following Plaintiff's injury, Plaintiff had three x-rays, two MRIs, and approximately 17 sick call, follow-up, or chronic care appointments concerning her injury. Any delay in ordering an x-ray and MRI appears to be the result of mere negligence, rather than deliberate indifference, as Plaintiff received continuous treatment for her hip and back injury. The record reveals that Plaintiff was consistently prescribed pain mediation and issued numerous van passes, work idles, and long term-lifting restrictions. Although Plaintiff appears to disagree with the appropriate course of treatment, an inmate's disagreement with her medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed

---

[14] There is no evidence that the typographical error in the initially x-ray report delayed or negatively altered the medical treatment provided to Plaintiff. Defendants contacted the radiologist, who verified that there was a typographical error and the x-ray was properly conducted on Plaintiff's left hip. (Document No. 37-3, p. 6.)

to 'that which may be considered merely desirable' to the inmate." <u>Malcomb v. Raja</u>, 2010 WL

3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting <u>Bowring v. Godwin</u>, 551 F.2d 44, 47-48 (4th

Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to

provide plaintiff with one medication over another does not give rise to a constitutional violation.")

The undersigned further finds that an inmate is not entitled to the best possible care, only reasonable

care. <u>Geoff v. Bechtold</u>, 632 F.Supp. 697, 698 (S.D.W.Va. 1986). Based on the foregoing, there is

no indication that Defendants acted with deliberate indifference by delaying testing or providing

treatment for Plaintiff's hip and back injury.

      **2.**     ***Plaintiff's claim that she was provided incorrect information concerning her MRI results.***

       Next, Plaintiff claims that Defendants acted with deliberate indifference by providing her

with incorrect information concerning her MRI results. Defendants contend that there is no evidence

of deliberate indifference, but merely a misunderstanding. It appears that an MRI of the lumbar spine

was conducted on May 30, 2007. The MRI report stated as follows:

> Degenerative disc disease with disc space narrowing and loss of signal at L2-3. End plate irregularity - change at superior end plate of L3. There are mild bulges present at the level of L3-4, somewhat more pronounced on the left but without evidence for definite neural foraminal encroachment or nerve root impingement.
>
> **IMPRESSION: Degenerative disc disease L2-3. Mild annular bulge at L3-4 on the left, to a lesser extent L2-3.**

(Document No. 37-9, p. 61.) On June 8, 2007, Plaintiff received a "Notification to Inmate," which

indicated that the MRI "[s]tudies were found to be normal." (Document No. 37-12.) Thus, Plaintiff

contends that Defendants acted with deliberate indifference because they inaccurately informed her

that her MRI results were "normal."[15] The undersigned notes, however, that the "Notification to Inmate" was a standard form that contains two options for notifying inmates of test results: (1) "Studies were found to be normal;" or (2) "Studies indicate further work-up is recommended. An appointment has been scheduled." Defendants explain that the option stating the "studies were found to be normal" was chosen because Plaintiff did not require further testing or treatment. Although Defendants could have explained the test results more clearly, there is no evidence that Defendants intentionally misinformed Plaintiff.[16] Defendants failure to accurately or clearly inform Plaintiff of the MRI results was at most negligent, which does not support a claim of deliberate indifference. Additionally, Defendants' failure to clearly inform Plaintiff as to the MRI results does not establish that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. The record is void of any evidence that the "Notification of Inmate" resulted in an incorrect diagnosis or delay in treatment. The record reveals that Dr. Callaway reviewed the MRI results approximately seven days after the MRI was conducted. Furthermore, Defendants continued to provide Plaintiff with

---

[15]  The undersigned notes that Plaintiff had herniated discs prior to her fall on November 7, 2006. On August 10, 2006, and September 18, 2006, medical staff noted that Plaintiff reported that she was diagnosed in 1993 with herniated disc C5 - C6. (Document No. 37-9, pp. 10 and 22.)

[16] Defendant Nelson responded to Administrative Remedy No. 457971 as follows (Document No. 37-4, p. 5.):

> The letter you received was reviewed and it was noted that there was an error on the form with regard to the source of the information. All test results are reviewed in Utilization Review and then a letter is sent to the patient regarding the findings. The letter is not sent by a particular staff member, it is sent from the Utilization Review committee. The letter you received did state that your test results were found to be normal; however, the findings on the report did not state normal. Your MRI report did indicate bulging discs at L3-L4 without nerve root impingement, which does not require any additional studies or treatment at this time. Utilization Review considers a test to be normal when no further work-up is recommended at this time. The letter you reference has been revised to clarify any misinterpretations.

treatment and additional testing[17] concerning her back and hip injury. Based on the foregoing, the undersigned finds that Defendants did not act with deliberate indifference by failing to accurately or clearly inform Plaintiff of her MRI results.

> ### 3.   *Plaintiff's claim that she was improperly denied medical van passes.*

Finally, Plaintiff claims that Defendants acted with deliberate indifference by failing to provide her with medical van passes. Plaintiff explains that the injury to her hip and back made it difficult and painful for her to walk to the Central Dining Hall. Defendants contend that Plaintiff "was provided with medical van passes and work idles on numerous occasions throughout 2006 and 2007." (Document No. 38, p. 21.)

Based on a review of the record, it appears that Plaintiff was issued medical van passes and provided idle, convalescent, or change in work status on numerous occasions. Specifically, Plaintiff was issued restrictions on the following dates:

| | |
|---|---|
| May 10, 2006: | lifting restriction for May 11, 2006, through May 11, 2007 (Document No. 37-11, p. 22.) |
| June 20, 2006: | idle status through June 21, 2006 (Id., p. 23.) |
| July 10, 2006: | one day idle status (Id., p. 24.) |
| July 11, 2006: | one day idle status (Id., p. 25.) |
| July 13, 2006: | idle status through July 14, 2006 (Id., p. 27.) |
| July 18, 2006: | idle status through July 19, 2006 (Id., p. 28.) |
| July 20, 2006: | idle status through July 21, 2006 (Id., p. 29.) |
| August 10, 2006: | restriction for no repetitive motion through August 10, 2007 (Id., p. 30.) |

---

[17] The undersigned notes that Defendant Rehburg ordered a third x-ray on August 20, 2007, and he ordered a second MRI after reviewing the x-ray results.

| | |
|---|---|
| August 29, 2006: | one day idle status (Id., p. 31.) |
| November 8, 2006: | van pass issued through November 10, 2006 (Id., p. 32.) convalescent status through November 11, 2006 (Id., p. 35.) van pass through November 22, 2006 (Id., p. 36.) |
| November 16, 2006: | one day idle status (Id., p. 37.) |
| November 17, 2006: | convalescent status through December 17, 2009 (Id., p. 33.) cane pass (Id., p. 34.) |
| November 27, 2006: | van and elevator pass through December 10, 2006 (Id., p. 38.) |
| December 7, 2006: | lifting restriction, sitting and standing restriction, and cane, van and elevator pass through January 7, 2007 (Id., p. 39.) |
| December 28, 2006: | lifting restriction, sitting and standing restriction, and cane and van pass through January 30, 2007 (Id., p. 40.) |
| February 20, 2007: | van pass through March 6, 2007 (Id., p. 42.) |
| February 22, 2007: | Defendant Rehburg denied the issuance of the van pass due to the need for Plaintiff to rehabilitate by walking (Id., p. 43.) |
| August 6, 2007: | convalescent status until August 20, 2007 (Id., p. 44.) |
| November 9, 2007: | convalescent status until November 15, 2007 (Id., p. 45.) |

With the exception of a four day period,[18] it appears that Plaintiff had a medical van pass from

November 8, 2006, through February 21, 2007. (Id., pp. 36 - 43.) On February 22, 2007, Defendant

Rehburg denied the issuance of the van pass finding that Plaintiff needed to walk for rehabilitation

purposes. (Id., p. 43.) There is no evidence that Defendants knew of and disregarded an excessive

---

[18]  It appears that Plaintiff had a van pass for the following time periods: (1) November 8, 2006, through November 22, 2006; and (2) November 27, 2006, through February 21, 2007. (Document No. 37-11, pp. 36 - 43.)

39

risk to Plaintiff's health or safety in denying medical van passes.[19] Although it appears that Plaintiff was not issued a van pass after February 22, 2007, Defendants continued to issue Plaintiff convalescent status, a cane pass, and prescribe pain medication. Additionally, the record reveals that Plaintiff was able to walk with the assistance of a cane. Plaintiff appears to merely disagree with Defendants' decision that walking was necessary for rehabilitative purposes. As stated above, such a disagreement does not state a claim of deliberate indifference. The undersigned, therefore, finds that Defendants did not act with deliberate indifference in denying Plaintiff a medical van pass.

4.      *Plaintiff's claims based upon a theory of respondent superior.*

Plaintiff names the following supervisory officials as Defendants: (1) Harley Lappin, Director of the Bureau of Prisons; (2) Newton Kendig, Medical Director for the Bureau of Prisons; (3)Deborah Hickey, former Warden of FPC Alderson; (4) Amber Nelson, former Warden of FPC Alderson; (5) Alice Lowe, former Associate Warden of FPC Alderson; and (6) Donna Saffold, former Associate Warden of FPC Alderson. Plaintiff alleges that Defendant Lappin and Kendig are "legally responsible for the safety, health, and welfare of all detainees of the Federal Bureau of Prisons." (Document No. 1, p. 9.) Plaintiff contends that Defendants Hickey, Nelson, Lowe and Saffold are "legally responsible for the overall operations of Alderson Federal Prison Camp, and the health and welfare of all detainees, as their custodian for the Department of Justice Federal Bureau of Prisons." (Id., pp. 9 - 10.) Accordingly, Plaintiff appears to argue that the above Defendants violated her constitutional rights by failing to ensure that she received proper medical treatment.

---

[19] Although Plaintiff contends that she was often in severe pain and unable to walk to the Central Dining Room to eat, the record reveals that Plaintiff gained approximately thirteen pounds from November 9, 2006, to August 29, 2008. (Document No. 37-8, p. 4 - 5 and Document No. 37-9, pp. 1 - 2.)

(Document Nos. 1 and 13.)

Defendants Lappin, Kendig, Hickey, Nelson, Lowe and Saffold contend that they are entitled to summary judgment because Plaintiff's claims against them are improperly raised under the doctrine of *respondeat superior*. (Document No. 38, pp. 22 - 24.) Defendants argue that "Plaintiff makes no specific allegations against these Defendants other than her claims that Defendants Nelson and Lowe responded to administrative remedy requests and denied van passes." (Id., p. 23.) Specifically, Defendants assert that "there is no supervisory liability against these individuals, and without any specific allegations pointing to personal actions taken on the part of these Defendants, they must be dismissed from this action." (Id.) In support, Defendant Nelson filed a declaration stating that during her tenure at FPC Alderson, she was "not personally involved in the day-to-day medical care of inmates." (Document No. 37-14.) Defendant Nelson explained that she "relied upon the judgment of trained medical staff to provide medical care for the inmates." (Id.)

In Response, Plaintiff argues that she alleged adequate personal involvement by Defendants Lappin, Kendig, Hickey, Nelson, Lowe and Saffold because each "was derelict in their duty to plaintiff." (Document No. 49, p. 13.) Plaintiff additionally indicates that Defendants Lappin, Kendig, Hickey, Nelson, and Lowe took personal action by denying her administrative remedy requests. (Id., pp. 6 - 7.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658,

41

Case 1:09-cv-00003  Document 50  Filed 11/23/10  Page 42 of 45 PageID #: 926

694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendants Lappin, Kendig, Hickey, Nelson, Lowe and Saffold argue that Plaintiff has failed to demonstrate specifically how they were personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendants violated her constitutional rights with respect to their failure to supervise employees and in responding to her administrative remedies. The evidence of record reveals that Defendants Lappin, Hickey, Nelson, and Lowe responded to administrative remedy requests filed by Plaintiff. (Document No. 37-3, p. 6, Document No. 37-4, p. 5, Document No. 37-5, p. 6, Document No. 37-6, p. 6, and Document No. 37-11, p. 9.) Plaintiff, however, has shown no other personal involvement by Defendant Hickey, Nelson, and Lowe,[20] and

---

[20] Plaintiff alleges that on August 7, 2007, she requested a van pass from Defendant Lowe. (Document No. 13, p. 7.) Defendant Lowe allegedly stated that "she would allow a temporary pass," but Plaintiff was not allowed to ride the van on August 9, 2007, because Defendant Lowe allegedly failed to provide written authorization. (*Id.*) Plaintiff states that Defendant Nelson denied her administrative request for a van pass on August 10, 2007. (*Id.*, p. 8.) The record is void of any evidence supporting Plaintiff's above claim against Defendant Lowe. Even assuming the allegations to be true, Defendant Lowe's act appears to be the result of negligence. There is no evidence that

the record does not indicate any personal involvement by Defendants Lappin, Kendig and Saffold. The dismissal of a non-medical defendant is appropriate where the defendant's sole involvement is the denial of an administrative remedy request. See Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); Mabry v. Ramirez, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003), aff'd, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). In order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct. Lewis v. Angelone, 926 F. Supp. 69, 73 (W.D.Va. 1996). Non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment.[21] Miltier v. Born, 896 F.2d 848, 854 - 55 (4th Cir. 1990). Finally, there is no evidence that Defendants Lappin, Kendig, Hickey, Nelson, Lowe, and Saffold were personally involved in a denial of

---

Defendant Lowe "acted wantonly, obdurately, or with deliberate indifference" when she failed to issue the temporary van pass for August 9, 2007. Furthermore, Plaintiff fails to allege how she was injured by being denied access to the van on August 9, 2007.

[21] The record reveals that Defendant Nelson denied Plaintiff's requests for van passes based upon Defendant Rehburg's determination that walking was necessary to rehabilitate Plaintiff's hip. (Document No. 37-5, p. 6.)

treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the prison physicians' conduct. Accordingly, Plaintiff has improperly raised her claim against Defendants Lappin, Kendig, Hickey, Nelson, Lowe, and Saffold under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court therefore finds that Defendants Lappin, Kendig, Hickey, Nelson, Lowe, and Saffold's Motion to Dismiss, or in the Alternative Motion for Summary Judgment should be granted. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment (Document No. 37.), **DISMISS** Plaintiffs' Complaint (Document No. 1.) as to Defendants Lappin, Kendig, Nelson, Lowe, Blankenship, Rehburg, Hickey, Saffold, Dupree, Engleman, and Godbold, and **REFER** this matter back to the undersigned for further proceedings regarding Plaintiff's FTCA claim.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: November 23, 2010.

R. Clarke VanDervort
United States Magistrate Judge